All rise. Hear, read, hear, read, hear, read. The United States Court of Appeals for the Veterans Service now open in front of you all. I'll send the United States to the side of the court. Please be seated. Thank you. Good morning. I have four appeals to hear this morning. Counsel, we're familiar with your cases. We've read your briefs, the authorities cited in your briefs, and at least portions of the record. We're probably going to have some questions for you, but feel free to get straight to the heart of your argument. But be mindful of our traffic lights, and when the red light shines, it's time for you to wrap it up. It's not like, you know, a warning. That's what the yellow light is. If you're answering a question from the court, though, of course, feel free to finish your answer. You'll be on our time. Okay, let's start with United States v. Franklin. Ms. McKay. Good morning, and may it please the court. Alicia McKay on behalf of Andre Franklin. This appeal concerns plain evidentiary error that requires either a new trial or a new sentencing. And I want to focus on the plain confrontation clause error that occurred in this case. Well, I want to figure out the record on that issue, okay? I take it you were appointed for the appeal? Yes, sir. Okay. I look at this minute entry, and it strikes me that what happened here, when I read the record and I'm trying to figure out what happened, that minute entry suggests to me that the report is among exhibits that the district court had said, hey, if there are exhibits that can be admitted without objection, let's get that handled before trial starts, before the jury's in the box, all that good. And that this is one of those exhibits. It's admitted without objection. Is that right?  I think the record does not necessarily demonstrate that. I understand Your Honor's point from the minute entry, and I think that's very much the government's position. But when we look at the exhibit 12, which is under, it's also the government exhibits. There's like a, I think it's docket 2773. It says 12 is a drug analysis report, and it says government moves to admit GX12, no objections. So why wouldn't we read it that way? Certainly in the minute entry. I think that there is, within the record itself, when we're looking at it, some uncertainty. And that's where – Well, see, here's the thing. You can't have sandbagging.  And if that's not what has happened, you know, if the district court has a minute entry that says that has been admitted without objection, and the defendant, in fact, thinks that's inaccurate, that we wouldn't read the record that way, then it seems to me the defendant's obliged to say something. Understood, understood. And I think when, in briefing this issue and looking at how the exhibit was referenced during trial and not having been a part of the lower proceedings, I think that that's where we come from in this case, understanding that the minute entry – Well, see, this is a super significant – Understood. Distinction, because if you read the record the way I think both Judge Lagoa and I are reading it, then we're not talking about a plain error situation. We're talking about a waiver.  You know, when you get counsel in to admit exhibits before trial, and one side says, we move to admit exhibit one, and the other side says, no objection, Your Honor. And the exhibit is moved. That's a waiver. That's not just a failure to object, a forfeiture, where we would then review it for plain error. Understood, understood. And that's certainly at step one of plain error analysis where the government has contention on that point. I think the record was unclear to Mr. Franklin at the time that it was briefed. Understanding the minute entry is a significant point and perhaps one that we cannot overcome at step one, understanding that. But this is just – I know that the minute entry is all we have. And I don't know if you know why that's all we have, why there wasn't a transcript of this. But the minute entry typically is just something that's entered either by a court reporter or by the – like a courtroom deputy. So I don't know how much weight to give. I think the problem is that's all we have. There is no transcript, at least before us, of what actually occurred at this conference, right? Certainly. And that is why it was briefed as it was. But the problem is if that's an inaccurate reflection of what's happening, then somebody needs to say something. Understood, understood. I think when we're talking about waiver and an intentional relinquishment of a known right, we would expect something more than a minute entry, and perhaps we don't. But isn't that on defense counsel? Because once there's testimony that's going to be – an exhibit is introduced, if there is a mistake, then counsel has an obligation to tell the court, the district court, Your Honor, I object. I didn't agree to restipulate to the entry of this exhibit. Sure. And I think that it falls on both the defense and the government in terms of – certainly the defense has an obligation to object to make a clear record of those objections. And if that had occurred here, we wouldn't be under the plein air review that we're under. On the flip side, I think it's also incumbent upon the government, if there is stipulated evidence, that it be clearly placed upon the record. That, you know, the government sort of suggests that it's unimportant in some instances to sort of place certain evidentiary stipulations on the record. And we would disagree with that. It certainly leads to uncertainty in the appellate process. So I think there are somewhat two sides to your question, Judge. But when we're looking at sort of this difference, obviously at step one of plein air review between forfeiture and waiver, Mr. Franklin's position is that there has to be a clear relinquishment of a right. And that's, you know, from Olano. That's established, and this court has recognized that in Lewis. You know, the minute entry certainly is problematic for our position. We understand that. But in terms of looking at what occurred when Agent Wiggins was presented with Government 12, there's very little in the record about that. What the record says is there is a comment by the prosecution, and these have been moved into evidence. Certainly there was no objection by defense counsel. But Mr. Franklin's position is that this is more akin to forfeiture than it is to waiver. When we look at, you know, for example, a recent case from this court, Campbell, from 2022, that sort of went through the difference between waiver and forfeiture in a bit of a different context. The difference is there. What's going on in Campbell is whether there's been waiver or forfeiture in the context of briefing on appeal. Correct, yes. That's different. It is different. But I think the court, you know, my point from Campbell that I wanted to make is that waiver is very much a question of intent. And intent is, of course, an evidentiary matter. And so we are limited to this certified record in terms of determining the difference, obviously, between waiver and forfeiture. The record in Mr. Franklin's, his position is that it does not support an intentional relinquishment of a known right in this case. To briefly sort of address the remaining steps of plain air review, I think there's significant hurdles at step one. We recognize that. At step two, I don't think there's much contention about the confrontation clause. So I won't spend much time there in terms of how this report came in without the use of an analyst. At step three, I do want to briefly talk about the effect on Mr. Franklin's substantial rights. At step three, Mr. Franklin, under plain air review, has to show a reasonable probability that but for this erroneous admission, that the result would have been different. And in the briefing, we talk a bit. Don't you have, I mean, this report is just one piece of the puzzle, isn't it? You also have dozens of phone calls where Franklin is tied to the sale and distribution of methamphetamine that the jury heard. Yes. I mean, how exactly were his rights substantially affected? Right. And I think I would point the court's attention to what we believe is sort of a critical role that the reports played in the sentencing enhancement aspect of this. And I did want to kind of talk about that. The way the case was indicted, the government didn't have to prove any specific substance or quantity to convict Mr. Franklin of a drug conspiracy. So we look then to sort of the penalty enhancement that's part of the indictment. And there the government proceeded under 841B1A8, which put his penalty range at an enhanced level of 10 years to life. If the government could prove to the jury that Mr. Franklin possessed methamphetamine in the amount of 50 grams or more. Our position is that there is a reasonable probability that the jury did rely on these reports in sort of making that determination under Apprendi that they had to make for the government to sort of apply the enhanced penalty scheme. Had the jury not returned verdict for the penalty aspect, Mr. Franklin would be under 841B1C, placing his maximum possible sentence at 20 years. Certainly he received in excess of that. So we do think that there is a reasonable probability, even understanding that the calls are part of the body of evidence and that the calls do talk about dollar amounts and drugs, that there is a reasonable probability that the reports did play a critical role for the jury's determination for sentencing. And for those reasons, we would ask this court to consider reversing Mr. Franklin's conviction, either for a new trial or a new sentencing. Thank you. Thank you, Ms. McKay. Mr. Talley. Your Honors, may it please the court, Brett Talley for the United States. On this Confrontation Clause issue, as your Honors have pointed out, there is the notation about the entry of Exhibit 12 in Document 435, which is the second…  Excuse me, sir. Did you try this? Did you try this? I was second chair on this. Yes, Your Honor. Okay. What happened? I mean, in candor to the court, what happened that led to that minute entry? In candor to the court, Your Honor, there is an email between the parties where the defense agrees not to object to the entry of the drug reports, and we move forward from there. This is like the typical situation where pre-trial, the court's trying to get as much agreement about things that don't need to bog down the trial. You know, can there be exhibits admitted without objection? Counsel, everybody's present, and say, yeah, we want to admit these exhibits. No objection, Your Honor. Is that the kind of situation? That is the kind of situation we're looking at here, Your Honor. This is the kind of thing that is often dealt with between attorneys pre-trial. I think that is a feature, not a bug. I think the Supreme Court recognized that in Melendez-Diaz. It sure would be helpful if the court did that on the record with a transcript. Yes, Your Honor. That's right, Judge Kidd. I appreciate your candor in giving us some sort of informal flavor of what happened, but based on this record, all we have is a minute entry. Really, how much weight are we supposed to place on a minute entry, which I don't know if the district judge even reviewed the minute entry before it went in. Well, some support for that minute entry, and I agree with you. That is not in the record. That's why I didn't put it in the brief. I guess if we had an evidentiary hearing or something, we could do that, but where we stand now, it is not in the record. I will note that document 435, page 30, as counsel acknowledged, there is a moment where the government attorney says, and these have already been moved into evidence, speaking of those reports, and then he proceeds to place each one of them on a projector so that he can go through each one with counsel, and I think that's more than just the minute entry. There's also that reference that is in the transcript of the trial.  Where they begin to start referring to those exhibits that have already been admitted. Correct, Your Honor. And obviously the confrontation clause can be waived. Absolutely. And in Melendez-Diaz, the court notes that it's always the responsibility of the defendant to raise it. It really troubles me that this issue is before us in this manner when clearly it was waived below, and it troubles me. I mean, do we really need to remand this to the district court in order to make these findings? I mean, that's a very, like if this was a civil case, I'd be looking at sanctions. I would be thinking about sanctions. Well, Your Honor, let me say this, and my friends, we discussed this. At the time, we could not find the email. We actually found the email after oral argument was, we knew it existed. We couldn't find it. After oral argument was already ordered, so I don't think there's a... What do you mean the email? The email between the two parties. I see. Because it was obviously a few years old, and the way the email was written, the keywords didn't work, and so we did not find it. So I would just say I don't think there's any impropriety on the part of Mr. Franklin and Mr. Franklin's attorneys in raising this. And, no, I don't think we need to remand it to the court, because even if the email did not exist, I still think under Melendez-Diaz, this is exactly what you expect to see. Melendez-Diaz laid out three possible scenarios where this whole confrontation clause issue would not be a problem in response to the dissent. One was... Well, I mean, obviously, the trial went forward, okay? Yes. So the fact that the trial went forward and this report came into evidence, and it's not in the transcript, suggests, based on the minute entry, that no one objected to it, because if there was an objection, there would be something in the transcript. You would assume...  ...that defense counsel would object if they had a problem. And that is Category 3 of Melendez-Diaz, that not every defendant is going to object, and I think that's the circumstance we have here, and that's why... And you can't stay silent. If you have an objection, you have to indicate you have an objection at that moment in time, contemporaneously. Correct, Your Honor, absolutely. And that is our position in a nutshell. That's for the law clerks, okay? I am happy to discuss this issue further, but if the court has no other questions, I'll go ahead and yield back my time. Thank you, Your Honor. Thank you. Mr. McKay. Thank you. Just want to sort of briefly address how we got here and why we got here. And it's because there is no clear stipulation in the transcripts. And so I hope that we don't leave the court... No, I mean, look, I get it. You're appointed for appeal. You're trying to raise whatever non-frivolous issue you can and can say on behalf of your client. I get it. I appreciate that. I do think, of course, if there was an objection here, the record would be very different. We would not be under plein air analysis. Instead, we're sort of pushed into this step one of plein air analysis of trying to figure out from the record whether there was an intentional relinquishment of a known right or whether there was just sort of silence or inaction, which would be more akin to forfeiture. What about the point that not only do we have the minute entry and what it reflects? And I will just tell you, when I read that minute entry, I automatically think that it likely means exactly what the government says it means. Right. And then you couple that with the transcript from trial, where then the first reference to that, the prosecutor says this has already been admitted. There's no objection or suggestion to the contrary, either by the court or by the defense counsel. Together, when we read those, that sure looks like we're in the waiver category. Right. I mean, we're on an uphill battle with plein air any time that we're raising that issue. I think the hill here is very steep for Mr. Franklin, and we recognize that and understand your point, Judge Pryor. I think that remand is not necessary. I want to just address that. This court may very well combine those two pieces at step one, and I understand where the judges are coming from this morning. I don't think that there is good support in this court's jurisprudence to sort of remand in this circumstance. There are certainly many cases where this court or other federal district courts, sorry, federal appellate courts remand for the district court to add some clarification to the record. This is a little bit, in our estimation, closer to sort of creating a record that wasn't created. Now, there are some indications, and we can't sort of bypass those. But I don't think there's strong support to sort of send a case back to create a record that just was not created during the trial itself. The record could be supplemented with an email, could it not? I don't know that the, and you'll correct me if I'm incorrect on this, but I don't know that it could be because it was never, well, I suppose in the district court you're saying it could be submitted on remand. Right, but that would be the, A remand. It wouldn't be creating a record, it would just be providing a basis for what transpired below.  And the district court could make a finding of fact as to what transpired below. Sure, sure. I mean, at the end of the day, as counsel coming into a case and as appellate counsel who is not privy to these discussions, I think it is incumbent upon the parties, especially the government, it's their evidence that they're submitting forward, to place that on the record. And so there is a clear indication of stipulation, of agreement, and of course, waiver. I agree with that. And I think it's incumbent upon the district court, too. I think it might, this might be a situation where there's enough in the record, when you couple the transcript plus the minute entry. But it sure would be helpful if the government and the district court make things clear in the record. I would greatly agree. Thank you so much. Okay. We're going to hear, and Ms. McKay, I note again that you were court appointed. We appreciate you accepting the appointment and discharging your duty ably this morning.